Garrick JOHN, Plaintiff,

v.

**N.Y.C. DEPARTMENT OF CORRECTIONS, Warden Albert Thompson, Captain Watts (Badge # 241), Guard Dry (Badge # 11852) and Guard Lello (Badge # 6435), Defendants.**

**No. 99 Civ. 5792(WCC).**

United States District Court,
S.D. New York.

Jan. 18, 2002.

Garrick John, Wewahitchka, FL, Plaintiff Pro se.

Michael D. Hess, Corporation Counsel of the City of New York (Michael P. Citrin,

Seth M. Rosen, Asst. Corporation Counsel, of counsel), Brooklyn, NY, for Defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

*Pro se* plaintiff Garrick John brings the instant action under 42 U.S.C. § 1983 against defendants New York City Department of Corrections ("NYDOC"), Warden Albert Thompson, Captain Steven Watts, Correction Officer ("C.O.") Gloria Dry and C.O. Michael Lello. Plaintiff alleges deprivation of due process under the Fourteenth Amendment and denial of his right of access to the courts in violation of the First and Fourteenth Amendments. Defendants move to dismiss the Complaint pursuant to: (1) the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e for failure to properly exhaust available administrative remedies; (2) FED.R.CIV.P. 12(b)(6) for failure to state a claim; and (3) collateral estoppel and res judicata. Plaintiff cross-moves for leave to amend the Complaint to: (1) reflect the personal involvement of Thompson; (2) allege an injury suffered; (3) allege a disparate treatment claim; (4) allege a claim for ineffective assistance of counsel; and (5) name as defendant then Commissioner of the NYDOC Bernard Kerick. For the reasons that follow defendants' motion to dismiss is granted and plaintiff's motion for leave to amend is denied.

### BACKGROUND

The facts set forth herein are gleaned from the pleadings and affidavits, and are construed in the light most favorable to plaintiff.[1] They do not constitute findings by the Court.

### I. *The Complaint*

During the relevant time period, plaintiff was an inmate at the Manhattan Detention Complex ("MDC") in New York. On August 18, 1998, Dry called plaintiff's name while delivering mail to the MDC inmates. (Complt.¶¶ 1–2.) When plaintiff responded, he noticed that Dry was inspecting legal materials sent through the mail to plaintiff by his attorney. (*Id.* ¶¶ 4–7.) Plaintiff protested and requested that Dry call the captain on duty, but Dry refused. Plaintiff then notified Celia Uehara, legal coordinator for the MDC law library, that Dry was reading his legal mail. (*Id.* ¶¶ 9–10.) When plaintiff returned to Dry's desk, he was informed that Dry was confiscating several photocopies of U.S. currency because it was considered contraband. (*Id.* ¶ 11.) Plaintiff requested a copy of the prison rule that categorized photocopies of money as contraband. (*Id.* ¶ 13.) Dry refused to give plaintiff a copy of the rule and, as a consequence, plaintiff refused to sign a book indicating that he had received all of his legal mail. (*Id.* ¶¶ 11–15.) The mail was subsequently returned to plaintiff's attorney. (*Id.* ¶ 17.) Later the same day, plaintiff informed Watts of the incident and again requested a copy of the prison regulation. (*Id.* ¶¶ 20, 22.) Watts refused and told plaintiff to file a grievance. (*Id.* ¶ 23.) Plaintiff's attorney, Michael Yucevicius, visited on September 1, 1998 with the photocopies of the money that were previously returned. However, at the conclusion of the meeting,

---

1. On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all of the well pleaded facts as true and consider those facts in the light most favorable to the plaintiff. See *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993); *In re AES Corp. Sec. Litig.,* 825 F.Supp. 578, 583 (S.D.N.Y.1993) (Conner, J.).

Lello confiscated the photocopies and returned them to Yucevicius. (*Id.* ¶ 27.)

Plaintiff argues that all defendants acted in concert pursuant to a policy directive issued by Thompson. He alleges that, as a result, he was denied the First Amendment right of access to the courts as well as procedural due process under the Fourteenth Amendment. (*Id.* ¶ 36.)

## II. *Proposed First Amended Complaint*

Plaintiff concedes that the Complaint failed to properly allege Thompson's personal involvement, failed to provide all the allegations necessary to establish the injury suffered and failed to name NYDOC Commissioner Bernard Kerick as a defendant. (Pl.Mem.Supp.Mot.Am.Complt.¶¶ 1–3.) In his Proposed First Amended Complaint, plaintiff names Kerick and supplements the factual allegations in the initial Complaint as follows:

The photocopies of money that Dry confiscated on August 18, 1998 were attached to photocopies of Western Union checks. (Proposed 1st Am.Complt. ¶ 16.) Other inmates with drug sale charges successfully receive photocopies of United States currency through the mail from their attorneys. (*Id.* ¶ 17.) On August 24, 1998, plaintiff filed a grievance with the Inmate Grievance Resolution Committee ("IGRC") regarding the incident. (*Id.*, Ex. F.) In his grievance, plaintiff alleged that his mail was improperly searched and confiscated. (*Id.*) Plaintiff explained that he expected his attorney to visit on September 1, 1998, and that he did not want to encounter a similar problem with Dry. (*Id.*) He further explained that he needed the photocopies because they would be admissible as evidence against him at his trial. (*Id.*)

Plaintiff additionally alleged in his grievance that the prison regulations did not give proper notice that photocopies of currency are contraband. The relevant prison regulations state:

Section 12.5 Prohibited Items in Incoming Correspondence

(a) When an item found in incoming correspondence involves a criminal offense, it may be forwarded to the appropriate authority for possible criminal prosecution. In such situations, the notice required by Section 12.6(c) may be delayed if necessary to prevent interference with an ongoing criminal investigation.

(b) A prohibited item found in incoming prisoner correspondence that does not involve a criminal offense shall be returned to the sender, donated or destroyed, as the prisoner wishes.

(c) Within 24 hours of the removal of an item, the Board and the intended prisoner shall be sent written notification of this action. This written notice shall include:

(i) the name and address of the sender;

(ii) the item removed;

(iii) the reasons for removal;

(iv) the choice provided by Section 12.6(b); and

(v) the appeal procedure.

(*Id.*, Ex. H.) Plaintiff argues that this provision is unconstitutionally vague and failed to provide the minimal procedural safeguards required by the Constitution. (*Id.* ¶¶ 47, 50.)

During his meeting with Yucevicius on September 1, 1998, plaintiff observed a conversation between Dry and Lello. (*Id.* ¶ 29.) Plaintiff alleges that Lello searched and confiscated the photocopies as a result of this conversation. (*Id.* ¶ 31.) After the meeting, plaintiff filed a second grievance with the IGRC. (*Id.*, Ex. F–1.) Plaintiff notified the IGRC that he had not received a response from his prior grievance and again requested a hearing. (*Id.*) After

failing to receive any response to either grievance, plaintiff filed a notice of appeal directly to Kerick on December 18, 1998. (*Id.*, Ex. G.) Plaintiff did not receive any response and a grievance hearing was never held.

In plaintiff's criminal trial, the State contended that plaintiff was paid with the Western Union checks to commit assault, attempted murder, murder in the second degree and conspiracy to commit murder. (*Id.* ¶ 34.) Plaintiff alleges that he was unable to challenge the State's witness because he was not allowed to keep the photocopies of the checks. (*Id.* ¶ 35.) He argues that if he had been given the opportunity to examine the checks prior to trial, he would have been able to locate and question the individuals responsible for wiring the money to plaintiff. (*Id.* ¶ 36.) Plaintiff claims that the defendants' actions deprived him of a meaningful defense and that the outcome of the trial would have been different had the photocopies not been confiscated.

Plaintiff argues that Dry and Lello are directly liable for deliberately interfering with his right of access to the courts by confiscating his legal mail. The claims against Watts arise from his knowledge of the alleged behavior and subsequent failure to remedy the situation. Similarly, plaintiff alleges that Thompson and Kerick exhibited deliberate indifference by failing to remedy the behavior outlined in plaintiff's grievances.

In addition to the denial of due process and right of access to the courts claims raised in the Complaint, plaintiff asserts that he was denied effective assistance of counsel and subjected to disparate treatment. (*Id.* ¶ 54.)

## DISCUSSION

### I. *Exhaustion Requirement*

■ As an initial matter, defendants argue that plaintiff's claims regarding the denial or right of access to the courts should be dismissed because plaintiff has failed to exhaust his administrative remedies pursuant to the PLRA. 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, or other correctional facility until such administrative remedies as are available are exhausted." Failure to comply with the exhaustion requirement is an affirmative defense. · *See Jenkins v. Haubert*, 179 F.3d 19, 28–29 (2d Cir.1999) ("[A] defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements."); *see also Hallett v. New York State Dep't of Corr. Servs.*, 109 F.Supp.2d 190, 196 (S.D.N.Y.2000).

Defendants argue that plaintiff's claim of denial of access to the courts should be dismissed because plaintiff alleges only that he filed grievances and had not received a response, and that "pursuant to the PLRA, plaintiff should wait until his grievances are addressed before filing suit in federal court." (Defs. Reply Mem.Supp. Mot. Dismiss & Opp.Pl.Mot.Am.Complt. at 4.) We decline to dismiss for failure to exhaust for the following reasons. First, defendant's did not satisfy their burden of proving that plaintiff failed to comply with the PLRA's requirements. *See Hallett*, 109 F.Supp.2d at 196.

■ The procedure for filing an inmate grievance is detailed in N.Y.Comp.Codes R. & Regs. tit. 7, § 701.7 *et seq.*, which provides, in pertinent part, that:

(a) First step, IGRC. The role of the IGRC is to resolve grievances or make recommendations for the resolution of the grievances filed.

(1) Filing the complaint. An inmate must submit a complaint to the Grievance Clerk within 14 calendar days of an alleged occurrence....

(i) Content. In addition to the grievant's name, department identification number, housing unit, program assignment, etc., the grievance must contain a concise, specific description of the problem and the action requested....

\* \* \* \* \* \*

(4) Hearing. If there is no [informal] resolution, the full IGRC shall hear and take action on the complaint. A hearing, if necessary, must take place within seven working days after receipt of the grievance.

\* \* \* \* \* \*

(b) Second step, appeal to superintendent.

(1) Filing an appeal. Within four working days after receipt of the committee's written response to the grievance, the inmate or any direct party to the grievance may appeal the IGRC action to the superintendent....

\* \* \* \* \* \*

(c) Third step, appeal to CORC [central office review committee].

(1) Within four working days after receipt of the superintendent's written response, an inmate or any direct party to the grievance may appeal the superintendent's action to the CORC....

Furthermore, N.Y.CORRECT.LAW § 139(3) states that "[a] person aggrieved by the decision of a grievance resolution committee may apply to the commissioner [of the DOC] for review of the decision."

In the instant action, plaintiff filed at least two complaints to the IGRC in 1998. When he received no response, he appealed directly to NYDOC Commissioner Kerick in December 1998. Plaintiff has not

received a response, and defendants argue that he must wait for a response to satisfy the exhaustion requirement. However, defendants produce no support for that assertion. Furthermore, it is not clear that plaintiff did not follow the proper grievance procedure under the circumstances. Defendants concede that plaintiff properly initiated a complaint with the IGRC. While it is true that plaintiff did not appeal the IGRC's decision to the superintendent or to the CORC, there was no decision to appeal. Although there is insufficient evidence before this Court to pass judgment on whether the MDC followed proper procedure, it is clear that plaintiff did not receive a hearing within seven days after filing his complaint. *See* N.Y.COMP.CODES R. & REGS. tit. 7, § 701.7(a)(4). Nonetheless, plaintiff did apprise Commissioner Kerick of the situation. Under these circumstances, we decline to hold that plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).

▮ Secondly, even if plaintiff failed to exhaust his administrative remedies, plaintiff's claim of denial of access to the courts is not subject to the PLRA exhaustion requirement. The Second Circuit has recently clarified the scope of the term "related to prison conditions." In *Nussle v. Willette,* the court held that "the use of the term 'prison conditions' in § 1997e(a) would appear to refer to 'circumstances affecting everyone in the area affected by them,' rather than 'single or momentary matter[s],' . . . that are directed at particular individuals." 224 F.3d 95, 101 (2d Cir. 2000) (citations omitted). The court concluded that claims of particularized instances of excessive force directed at an inmate are not "brought with respect to prison conditions" and therefore are not subject to the exhaustion requirement. *See id.* at 105–06. The court subsequently

extended the logic of *Nussle* to hold the exhaustion requirement inapplicable to cases alleging individualized retaliation against prisoners. *See Lawrence v. Goord,* 238 F.3d 182, 186 (2d Cir.2001) (noting that "[t]he underlying principles requiring exhaustion—giving notice to administrators and allowing policy makers to change their behavior—are not served when a practice is aimed at one specific inmate rather than the prison population as a whole"). Finally, in *Royster v. United States,* 8 Fed.Appx. 33, 34–35 (2d Cir. 2001), the court vacated the district court's dismissal of plaintiff's claims based upon the denial of access to legal documents for failure to exhaust. The court noted that,

> the district court's conclusion that '[i]t ... does not matter [to the applicability of the exhaustion requirement] whether the prisoner's challenge is to a systematic problem or to one that is individual, or, for that matter, to whether the alleged misconduct is pursuant to a prison policy or *ultra vires,*' does not, in light of *Nussle* and *Lawrence,* reflect the law of our Circuit. These opinions make clear that whether or not the exhaustion requirement applies to [plaintiff's] claim will be substantially affected by whether the denial of access to documents ... occurred idiosyncratically or pursuant to some prison policy.

*See id.*

We hold that plaintiff's claim does not relate to "prison conditions" as construed by the Second Circuit. In the instant action, plaintiff does not allege a widespread prison policy categorizing photocopied currency as contraband. Instead, plaintiff alleges that he was singularly subjected to unconstitutional treatment while all other prisoners with pending drug charges were permitted to receive photocopied currency. (Proposed 1st Am. Complt. ¶ 17.) As a result, plaintiff's claim

does not relate to "prison conditions" and is not subject to the PLRA's exhaustion requirements. *See Lawrence,* 238 F.3d at 186.

## II. *Leave to Amend*

Plaintiff requests leave to amend the Complaint to: (1) allege additional facts with respect to the denial of due process and right of access claims; (2) name Kerick as a defendant; (3) assert an ineffective assistance of counsel claim; and (4) assert a disparate treatment claim.

FED.R.CIV.P. 15(a) allows a party to amend its pleading more than twenty days after being served, or after a responsive pleading has been served, only with the court's permission. The rule instructs that "leave shall be freely given when justice so requires." The Supreme Court has held that:

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should ... be freely given.

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46 F.3d 230, 234–35 (2d Cir.1995).

The Second Circuit instructs lower courts to allow amendment unless the movant has acted in bad faith, the amendment will prejudice the non-movant or the amendment is futile. *See Richardson Greenshields Secs., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987) (stating that "[m]ere delay, ... absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend") (citations omitted);

*McCoy v. Goldberg,* 845 F.Supp. 155, 157 (S.D.N.Y.1994) (Conner, J.). Because a responsive pleading has already been served, leave to amend must be obtained from the district court. FED.R.CIV.P. 15(a). The grant or denial of leave to amend is squarely within the discretion of the trial court. *See Foman,* 371 U.S. at 182, 83 S.Ct. 227.

### A. *Standard of Review*

■■■ When a cross-motion for leave to amend is made in response to a FED. R.CIV.P. 12(b)(6) motion, "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim...." *Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001). On a motion to dismiss under Rule 12(b)(6), the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States,* 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1088 (2d Cir.1995). At the same time, pro se complaints "are held to 'less stringent standards than formal pleadings drafted by lawyers,' and are to be construed liberally on a motion to dismiss." *Van Ever v. New York State Dep't of Corr. Servs.,* No. 99 Civ. 12348, 2000 WL 1727713, at *2 (S.D.N.Y. Nov. 21, 2000) (citations omitted).

■■■ In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference, *see* FED.R.CIV.P. 10(c); *De Jesus v. Sears, Roebuck & Co., Inc.,* 87 F.3d 65, 69 (2d Cir.1996), and documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference. *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 46–48 (2d Cir.1991); *Lee v. State of New York Dep't of Corr. Servs.,* No. 97 Civ. 7112, 1999 WL 673339, at *2 n. 4 (S.D.N.Y. Aug. 30, 1999); *see United States Fidelity & Guaranty Co. v. Petroleo Brasileiro S.A.–Petrobras,* No. 98 Civ. 3099, 2001 WL 300735, at *2 (S.D.N.Y. Mar. 27, 2001) ("the Court can consider documents referenced in the complaint and documents that are in the plaintiffs' possession or that the plaintiffs knew of and relied on in their suit.").

### 1. *Denial of Access to the Courts as a Result of Interference with Legal Mail*

■■■ To state a valid constitutional claim under § 1983 for denial of access to the courts due to interference with an inmate's legal mail, an inmate must allege that a defendant's deliberate and malicious interference actually impeded his access to the court or prejudiced an existing action. *See Cancel v. Goord,* 2001 WL 303713, 2001 U.S.Dist. LEXIS 3440 (S.D.N.Y. March 21, 2001) (citing *Lewis v. Casey,* 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)).

■■■ Defendants argue that plaintiff's denial of access claim should be dismissed because neither the Complaint nor the Proposed First Amended Complaint allege actual injury. "[T]o survive a motion to dismiss, a plaintiff must allege not only that the defendant's alleged conduct was

deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Cancel,* 2001 WL 303713, at *3, 2001 U.S.Dist. LEXIS 3440, at *12; *see also Warburton v. Underwood,* 2 F.Supp.2d 306, 312 (W.D.N.Y.1998) ("the plaintiff must show that a 'non-frivolous legal claim had been frustrated or was being impeded' due to the actions of prison officials") (citations omitted).

Plaintiff concedes that his Complaint "fail[ed] to provide all the factual allegations that will establish the injurys (sic) suffered by the plaintiff as a result of the defendants' deliberate misconduct with plaintiff's rights to receive legal mail and legal documents." (See Pl.Mem.Supp.Mot. Am.Complt. ¶ 3.) In his Proposed First Amended Complaint, plaintiff alleges, in relevant part, that:

> (29) On September 1st, 1998, the plaintiff received a legal interview with his attorney and a few minutes prior to the end of the interview the plaintiff observe[d] defendant Dry and defendant Lello engaged in a conversation, which the plaintiff did bring to the attention of his attorney.
>
> (30) At the end of the interview defendant Lello search[ed] through the legal documents of plaintiff; he then confiscate[d] and return[ed] to plaintiff's attorney the photocopies of U.S. currency that were attached to photocopies of Weston (sic) checks.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (33) At the plaintiff['s] criminal trial the State produced both the photocopies of U.S. currency and the photocopies [of] Weston (sic) Union checks that were wired to the plaintiff from the State of New York to the State of Florida.
>
> (34) The State declare[d] that the plaintiff [was] paid from the Weston (sic)

Union checks to commit the following crimes of assault, attempt[ed] murder, second degree murder, and murder conspiracy.

> (35) The testimony of the State witness; who was not a sender of any of the Weston (sic) Union checks went by unchallenge[d], because both defendants Dry and Lello hindered the plaintiff from receiving the photocopies of Weston (sic) Union checks that were attached to the photocopies of U.S. currency.
>
> (36) On information and belief had the plaintiff been given the opportunity to receive and examine the entitled Weston (sic) Union checks prior to trial, he would have been able to provide his trial counsel with the necessary information to locate and call as witnessess each of the individuals that had wired money to the plaintiff through Weston (sic) Union; and plaintiff and his trial counsel would have prepared and present[ed] a meaningful defense to negate the State's case where there was no other evidence that actually connected the plaintiff to the charged crimes at trial.
>
> (37) And had the plaintiff and his trial counsel not been hindered from preparing a meaningful defense by the bad acts of defendants Dry and Lello the outcome of the plaintiff['s] criminal trial would have been different and the plaintiff would have been exonerated from the charges he stand[s] convicted for in New York State.

■ Based on these allegations, we conclude that plaintiff does not state a cognizable § 1983 claim because he fails to allege an actual injury. Assuming the truth of plaintiff's factual allegations, as we must, plaintiff states that he was given the opportunity to meet with his attorney, and it was only near the conclusion of the

meeting that the photocopies were seized. Contrary to plaintiff's legal arguments, his own factual allegations demonstrate that he was not denied the opportunity to review and examine the photocopied checks. At best, plaintiff has pled facts sufficient to support a claim that he was denied the ability to retain the photocopies at the MDC after his attorney left. However, this is not a cognizable claim under § 1983. Because his attorney had the photocopies, there was no interference with his defense of the charges against plaintiff. Thus plaintiff fails to allege in either his Complaint or Proposed First Amended Complaint any facts that, if proven true, would demonstrate that he suffered actual prejudice. Accordingly, plaintiff's denial of access claim is dismissed with prejudice and plaintiff's motion for leave to amend with respect to this claim is denied as futile.

### 2. Constitutional Violation for the Mishandling of Mail

■ Prison inmates have a First Amendment right to the free flow of mail. *See Hudson v. Greiner*, 2000 WL 1838324, at *5 (S.D.N.Y. Dec. 13, 2000); *Heimerle v. Attorney General*, 753 F.2d 10, 12 (2d Cir.1985). Although an inmate must be present when his legal mail is opened, *Wolff v. McDonnell*, 418 U.S. 539, 574–76, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), in order to state a constitutional claim for the mistreatment of mail, plaintiff must allege facts which show that defendants acted with invidious intent. *See Jermosen v. Coughlin*, 877 F.Supp. 864, 870 (S.D.N.Y. 1995). "Additionally, plaintiff must allege that the opening of mail outside his presence caused him to suffer damage." *See Hudson*, 2000 WL 1838324, at *5 (citing cases).

Plaintiff alleges in both his Complaint and Proposed First Amended Complaint that defendants opened his legal mail out-side of his presence. However, for the reasons stated above, *see supra* Part II. A.1., plaintiff failed to allege in his Proposed First Amended Complaint facts sufficient to establish any actual injury. Accordingly, plaintiff's mishandling claim is dismissed and plaintiff's motion for leave to amend is denied.

### 3. Ineffective Assistance of Counsel

■ In his Proposed First Amended Complaint, plaintiff alleges that defendants denied him effective assistance of counsel. To prevail on a claim for ineffective assistance of counsel, a plaintiff must satisfy the two-part test under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Plaintiff must show that his attorney's performance "fell below an objective standard of reasonableness" and "that the deficient performance prejudiced the [plaintiff]." *See id.* at 687–88, 104 S.Ct. 2052. Plaintiff makes no factual allegations that would support a conclusion that he was denied effective counsel at any point. Accordingly, plaintiff's request for leave to amend with respect to this claim is denied as futile.

### 4. Disparate Treatment

In his claims for relief, plaintiff repeatedly alleges that he was denied "access to the courts, to effective assistance of counsel, to procedural due process, [and] to be free from disparity (sic) treatment." (Proposed 1st Am.Complt. ¶¶ 54, 58, 63, 67, 81.) We can only surmise that plaintiff intends to assert an equal protection claim based on his allegations that other prison inmates were allowed to keep photocopies of currency. Outside of this conclusory allegation, plaintiff alleges no facts to support such a claim. Plaintiff fails to clarify the basis for this alleged discrimination or specify whether it was intentional or accidental. Accordingly, the claim could not

survive a motion to dismiss and plaintiff's leave to amend is therefore denied as futile.

### III. *Procedural Due Process*

 Plaintiff argues that prison regulation 12.5(b) is unconstitutionally vague and consequently failed to provide him adequate notice that he would be unable to retain the photocopied money. To state a claim for denial of procedural due process, a plaintiff must establish that: (1) he possessed a liberty or property interest protected by the Constitution or federal statute; and (2) the requisite process was not provided before he was deprived of that interest. *See Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Although defendants do not move as to this claim, we conclude, *sua sponte,* that the claim should be dismissed as without merit. Even assuming that plaintiff was given no notice that photocopied currency was contraband and that he received no hearing on the issue, plaintiff fails to allege that he was deprived of a protected property or liberty interest. While prisoners have a protected First Amendment right to receive incoming mail, *see Hudson,* 2000 WL 1838324, at *5, this does not include the right to receive contraband. The allegations in plaintiff's complaint demonstrate that plaintiff had the opportunity to examine the photocopied currency during the visit with his attorney, so that he cannot plausibly allege injury. Therefore, the procedural due process claim is dismissed, and the motion to amend the Complaint with respect to this claim is denied as futile.

### CONCLUSION

For the reasons set forth above, we grant defendants' motion to dismiss the Complaint with prejudice as to plaintiff's § 1983 claim for denial of access to the courts and his constitutional claim for mishandling of the mail and without prejudice as to plaintiff's claim for deprivation of procedural due process. We similarly deny as futile plaintiff's motion for leave to amend the Complaint.

SO ORDERED.