**Robert DAVIS, Plaintiff–Appellee,**

v.

**Glenn S. GOORD; Christopher Artuz; Sabina Kaplan; John P. Keane; Mervat Makram; Frank Lancellotti; Janice Diehl; Thomas Briggs; Tim Terbush; and Thomas Egan, Defendants–Appellants.**

**Docket No. 01–0116.**

United States Court of Appeals, Second Circuit.

Argued Sept. 4, 2002.

Decided Feb. 11, 2003.

---

Robert S. Davis, pro se, Comstock, NY.

Allison Penn, Assistant Solicitor General, State of New York, New York, N.Y.

(Caitlin J. Halligan, Solicitor General; Michael S. Belohlavek, Deputy Solicitor General; Eliot Spitzer, Attorney General of the State of New York, New York, NY, on the brief), for Defendants–Appellants.

Before: CALABRESI and B.D. PARKER, JR., Circuit Judges, and STEIN, District Judge.[1]

STEIN, District Judge.

## I. BACKGROUND

The following facts are as alleged in the complaint:

In May 1998, Robert Davis, then an inmate at Green Haven Correctional Facility, a New York state maximum security prison, filed a civil rights action pursuant to 42 U.S.C. § 1983 against defendants Artuz, Kaplan and other prison officials. Soon thereafter, Davis was transferred to a medium security prison, Woodbourne Correctional Facility.

Upon his arrival at Woodbourne, defendants Drs. Lancellotti and Makram—medical doctors at Woodbourne—allegedly delayed placing Davis on his "medically prescribed high fiber diet," and instead gave him medication that, in combination with the delay, had the effect of worsening his medical condition. When Davis told Lancellotti and Makram about his worsened condition, they ignored him and told him that "they had heard all about [him]." When Davis reported the prison doctors to the prison grievance office for refusing to provide his high fiber diet, Lancellotti and Makram gave him a medical appointment and made him "sit in a prison waiting area for approximately 3 hours" before refusing to see him. They also allegedly treated Davis in a "sarcas-

---

1. The Honorable Sidney H. Stein of the United States District Court for the Southern District of New York, sitting by designation.

tic" and "disrespectful" manner by "calling [him] stupid," failed to respect his medical confidentiality by sending the results of a blood test to prison administrative officials and eventually ordered the prison cafeteria to stop providing his high fiber diet.

Subsequently, Davis filed a grievance with defendant Keane, the superintendent at Woodbourne, because the grievance office, supervised by defendant Terbush, had allegedly ignored his earlier grievance against Drs. Lancellotti and Makram. In retaliation for this grievance, Keane allegedly had Davis' cell searched while Terbush "vindictively hid" the earlier grievance against the prison doctors, forcing Davis to file yet another grievance to have his prior grievance "excavated from Terbush's hidden files." Later, when Davis filed yet an additional grievance against Lancellotti, his cell was again searched.

In addition, on one occasion defendant Diehl, the senior mailroom clerk at Woodbourne, allegedly opened a letter from Davis, addressed to a state court, outside his presence. She subsequently returned the letter to him, claiming that he had failed to follow procedures for addressing legal mail; namely, that Davis had failed to spell out the name of Woodbourne Correctional Facility in full on his return address. On another occasion, Diehl opened incoming legal mail outside Davis' presence. Davis contends that Keane permitted Diehl to interfere with his legal mail.

Defendants moved to dismiss Davis' complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. On March 22, 2001, Judge Brieant issued a Memorandum and Order dismissing Davis' complaint, with prejudice, in its entirety. Although Judge Brieant dealt with a panoply of allegations

in the complaint, only two remain at issue subsequent to our March 5, 2002 Order: whether defendants improperly interfered with Davis' legal mail and whether defendants retaliated against him for having filed grievances. With respect to these issues, Judge Brieant did not explicitly address Davis' claim of interference with his legal mail in his Memorandum and Order of March 22, 2001, and dismissed the alleged retaliation incidents as "petty charges against the management of the institution."

This appeal followed, with Davis contending principally that the complaint adequately sets forth claims upon which relief can be granted. Defendants contend that Davis failed to allege any facts showing that the incidents of interference with his legal mail prejudiced his access to the courts and that his retaliation claims do not meet the pleading standard required to allege retaliation properly.

## II. DISCUSSION

### A. The Legal Standards

 A plaintiff's claims can be dismissed for failure to state a claim only if we find that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Moreover, because Davis' "complaint alleges civil rights violations and he proceeded *pro se* in the district court, we must construe his complaint with particular generosity." *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir.2002) (per curiam) (citing *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir.1999)). With those standards in mind, we turn to Davis' contentions.

B. Interference with Legal Mail

■ Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution. To state a claim for denial of access to the courts—in this case due to interference with legal mail—a plaintiff must allege that the defendant "took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir.1997) (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996)); *see also Cancel v. Goord*, No. 00 Civ.2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) ("[I]n order to survive a motion to dismiss a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim.") (citing *Lewis*, 518 U.S. at 353, 116 S.Ct. at 2181).

■ In addition to the right of access to the courts, a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment. *See Heimerle v. Attorney General*, 753 F.2d 10, 12–13 (2d Cir.1985); *Hudson v. Greiner*, No. 99 Civ. 12339, 2000 WL 1838324, at * 5 (S.D.N.Y. Dec.13, 2000). Restrictions on prisoners' mail are justified only if they "further[ ] one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir.1986) (internal citations and quotation marks omitted). In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S.Ct. 1874, 1881–82, 104 L.Ed.2d 459 (1989); *Washington*, 782 F.2d at 1138–39; *Davidson v. Scully*, 694 F.2d 50, 53 (2d Cir.1982).

■ While a prisoner has a right to be present when his legal mail is opened, *Wolff v. McDonnell*, 418 U.S. 539, 574–76, 94 S.Ct. 2963, 2983–85, 41 L.Ed.2d 935 (1974), an isolated incident of mail tampering is usually insufficient to establish a constitutional violation. *See Morgan v. Montanye*, 516 F.2d 1367, 1371 (2d Cir. 1975); *Washington*, 782 F.2d at 1139. Rather, the inmate must show that prison officials "regularly and unjustifiably interfered with the incoming legal mail." *Cancel*, 2001 WL 303713 at *6 (citing *Washington*, 782 F.2d at 1139).

In *Washington*, we determined that as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received. 782 F.2d at 1139. Following *Washington*, district courts have generally required specific allegations of invidious intent or of actual harm where the incidents of tampering are few and thus the implication of an actionable violation is not obvious on its face. *See, e.g., Cancel*, 2001 WL 303713 at *6 (dismissing claim where only two incidents of tampering alleged and no other indications of a continuing practice); *John v. N.Y.C. Dep't of Corrections*, 183 F.Supp.2d 619, 629 (S.D.N.Y.2002) (requiring plaintiff to allege facts that show defendants acted with invidious intent and plaintiff was harmed by the interference); *Hudson*, 2000 WL 1838324 at *5 (same);

*Johnson v. Morton,* No. 95 Civ. 949, 1996 WL 518078, at *1 (E.D.N.Y. Aug. 26, 1996) (noting that "[c]ourts have consistently applied *Morgan* [*v. Montanye* ] to dismiss suits by inmates alleging unconstitutional opening of their legal mail without any showing of damages"); *see also Lewis,* 518 U.S. at 351, 116 S.Ct. at 2180 (holding that inmate must establish actual injury, rather than "theoretical deficiency" with legal library or legal assistance program to state constitutional claim for interference with access to courts).

▆▆▆ Davis' allegations of two instances of mail interference are insufficient to state a claim for denial of access to the courts because Davis has not alleged that the interference with his mail either constituted an ongoing practice of unjustified censorship or caused him to miss court deadlines or in any way prejudiced his legal actions. Mere "delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Jermosen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y. 1995) (citing *Jones v. Smith,* 784 F.2d 149, 151–52 (2d Cir.1986)). Similarly, Davis fails to state a constitutional claim for violating his right to send and receive legal mail because he alleges neither facts that would establish an ongoing practice by prison officials of interfering with his mail nor facts that set forth any harm he claims to have suffered from the tampering. Thus, dismissal of these claims was proper.

▆▆▆ However, the district court should have given Davis leave to amend his complaint to attempt to allege such an injury, if possible. *See Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (per curiam) ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the [*pro se* ] complaint gives any indication that a valid claim might be stated."). This is especially true since Davis alleges that Diehl opened his outgoing legal mail, which is subject to greater constitutional protection because of the lesser security concerns presented. *See Thornburgh,* 490 U.S. at 413, 109 S.Ct. at 1881–82; *Davidson,* 694 F.2d at 53. While it is unlikely that Davis will be able to sustain a constitutional claim if the letter simply was returned for an insufficient return address,[2] additional factual allegations regarding the nature of the interference could possibly establish that Davis' rights were violated and he should be given an opportunity to allege those facts. *See Gomez,* 171 F.3d at 795–96.

## C. Retaliation

▆▆▆ Courts properly approach prisoner retaliation claims "with skepticism and particular care," because "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), overruled on other grounds by *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Thus, in order to survive a motion to dismiss a complaint, "a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations ... (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Id.* at 492. Since the filing of prison grievances is a constitutionally protect-

---

**2.** It should be noted that defendants proffer no justification for apparently requiring that the name "Woodbourne Correctional Facility" be spelled out in full on return addresses.

ed activity, Davis meets the first prong of the test. *See Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir.1988). We turn now to the second and third prongs of the test set forth in *Dawes v. Walker, supra.*

1. Adverse Actions

Davis alleges that after he filed a grievance against Lancellotti and Makram, the doctors continued to retaliate against him by calling him "stupid," failed to respect his medical confidentiality by sending the results of a blood test to prison officials, and again discontinued providing his high fiber diet. Davis alleges that defendant Terbush "underhandedly tried to hide plaintiff's grievances" against Makram and Lancellotti and that he failed to forward Davis' grievances to the appeals level within the required time. Davis states that after he filed a grievance against Terbush, Terbush further retaliated against him by speaking to him in a "hostile" manner, "burying" his grievances and discussing Davis' grievance with another prison official, and that Keane retaliated against Davis' grievance filings by ordering a "retaliatory cell search." Defendants contend that Davis' submissions show that his grievances against Makram and Lancellotti went through the necessary appeals, and that Davis has not shown that any of these actions by prison officials constituted adverse action sufficient to state a retaliation claim.

 "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Dawes,* 239 F.3d at 493. *See also Thaddeus -X v. Blatter,* 175 F.3d 378, 398 (6th Cir.1999) (retaliation against an inmate must be likely to "chill a person of ordinary firmness from continuing to engage" in a protected activity). "Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes,* 239 F.3d at 493. In making this determination, the court's inquiry must be "tailored to the different circumstances in which retaliation claims arise," bearing in mind that "[p]risoners may be required to tolerate more ... than average citizens, before a [retaliatory] action taken against them is considered adverse." *Id.* (quoting *Thaddeus -X,* 175 F.3d at 398).

 Insulting or disrespectful comments directed at an inmate generally do not rise to this level. *Dawes,* 239 F.3d at 492 (calling inmate a "rat" not a constitutional violation); *see also Morales,* 278 F.3d at 131. Thus, Lancellotti and Makram's "sarcastic" comments do not, without more, constitute an adverse action. Similarly, Davis' allegations regarding conversations between Terbush and other prison officials are speculative and complaints of Terbush's "hostile manner" are *de minimis.*

However, it is possible that there were adverse effects resulting from his not being given his high fiber diet or having to wait for a medical appointment, and Davis should be given an opportunity to set those forth. In addition, although his grievances against Lancellotti and Makram were eventually resolved, Davis' repeated efforts to surmount Terbush's alleged barriers to timely filing could be construed as efforts beyond what is reasonably expected of an inmate with "ordinary firmness." *Dawes,* 239 F.3d at 493. In other words, Davis should not be denied remedy because his extraordinary efforts resulted in the resolution of grievances that would have deterred a "similarly situated individual of ordinary firmness from exercising his constitutional rights." *Id.; Crawford-El v. Britton,* 93 F.3d 813, 826 (D.C.Cir.

1996) (en banc), rev'd on other grounds, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) ("the effect on freedom of speech of retaliations 'need not be great in order to be actionable.' "); *Walker v. Pataro*, No. 99 Civ. 4607, 2002 WL 664040, at *9 (S.D.N.Y. Apr.23, 2002) (favorably contrasting *Dawes* in determining that "[t]he test, however, is not whether plaintiff . . . himself was chilled (if that were the standard, no plaintiff likely would prevail, for the very commencement of a lawsuit could be used by defendants to argue that the plaintiff was not chilled) . . ."). Therefore, Davis should have the opportunity to attempt to allege facts that would support the inference that the alleged retaliation would have deterred a reasonable inmate from pursuing his grievances. *See Morales*, 278 F.3d at 131–32 (citations omitted).

### 2. Causal Connection Between Protected Speech and Adverse Action

Davis alleges that Makram and Lancellotti retaliated against him for filing his previous lawsuit at Green Haven by, in part, delaying his placement on his medically prescribed high fiber diet and making him wait to be seen by a doctor. These actions occurred prior to Davis filing any grievances against them. Defendants do not dispute that they took adverse action against Davis but claim that the retaliation allegation must be dismissed because "plaintiff alleges no specific facts establishing a causal connection between the adverse actions taken against him by defendants at Woodbourne . . . and the filing of his prior lawsuit against the Green Haven officials."

██ In order to satisfy the causation requirement, allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action." *Dawes*, 239 F.3d at 492 (internal quotation marks and citation

omitted). Davis alleges that, at some point after these initial adverse actions, Makram and Lancellotti told him that "they had heard all about [him]." Davis also contends that the initial allegedly retaliatory conduct occurred "immediately" after Davis was transferred from Green Haven, and "there was nothing to prevent" Green Haven defendants from passing on information of his prior lawsuit, though he could not be aware of such communications "because retaliatory plots are by their very nature secret." None of these contentions, individually or collectively, are sufficient to support an inference of a causal relationship. *See Diesel v. Town of Lewisboro*, 232 F.3d 92, 107 (2d Cir.2000); *Morales*, 278 F.3d at 131 (short time frame between grievance and retaliatory action, along with allegation of the defendant's involvement, sufficed to support an inference of a retaliatory motive); *Dawes*, 239 F.3d at 492 ("failure to set forth a time frame for the alleged events . . . precludes inference of a causal relationship."). However, Davis should have the opportunity to attempt to allege additional facts that would support an inference that there exists a causal connection between his previous lawsuit and any subsequent adverse actions at Woodbourne.

We therefore vacate that portion of the district court's judgment that dismissed with prejudice plaintiff's retaliation claims against defendants Keane, Makram, Lancellotti and Terbush.

### III. CONCLUSION

The district court correctly dismissed the complaint, since as pleaded it did not state claims pursuant to 42 U.S.C. § 1983 for interference with Davis' legal mail and retaliation. However, the district court should have granted Davis leave to replead those claims. Therefore, for the reasons set forth above, we vacate the judgment

and remand for further proceedings consistent with this opinion.[3]

**3.** In addition, we suggest that the district court appoint counsel to represent Davis in repleading.