462 F.2d 670
 Gregory WILKINSON, individually and on behalf of all others
similarly situated, Plaintiff-Appellant,
v.
Albert W. SKINNER, Monroe County Sheriff, and Lieutenant
Anthony Gombatto, Monroe County Sheriff's
Department, Defendants-Appellees.
 No. 731, Docket 72-1166.
 United States Court of Appeals,
 Second Circuit.
 Argued April 14, 1972.
Decided June 28, 1972.
 
 Stanley Bass, New York City (David C. Leven, Rochester, N.Y., Martin R. Stolar, New York City, on the brief), for plaintiff-appellant.
 Michael K. Consedine, Rochester, N. Y. (William J. Stevens, Monroe County Atty., Rochester, N.Y., on the brief), for defendants-appellees.
 Before FRIENDLY, Chief Judge, and SMITH and OAKES, Circuit Judges.
 OAKES, Circuit Judge:
 
 
 1
 Plaintiff-appellant Wilkinson is awaiting trial in the Monroe County Jail, Rochester, New York, because he could not raise bail. He appeals from the district court's dismissal, without a hearing, of his Sec. 1983 action[1] against jail officials, in which he complains (1) that all his outgoing and incoming mail has been censored; (2) that certain outgoing mail to his mother and attorney was not sent by defendants-appellees; and (3) that copies of a newspaper to which he subscribes were withheld from him by them.
 
 
 2
 Appellant requests reversal of the judgment below and remand for a three-judge court proceeding to decide his challenge to the constitutionality of 7 NYCRR Sec. 5100.10(e),[2] which as it stood at the time of argument required censorship of all outgoing and incoming mail of local jail inmates awaiting trial. He also sought below, and was denied, preliminary as well as permanent injunctive relief from the censorship, in order to make possible necessary pretrial communication with his New York City counsel. The defendant sheriff in charge of the county jail conceded that his censorship was "pursuant to" the regulation in question.
 
 
 3
 As to mail to and from counsel, this court had already made it very clear that prison officials who would interfere with first amendment rights bear a heavy burden to show abuse in terms of transmittal of contraband or the laying of plans for some unlawful scheme See Wright v. McMann, 460 F.2d 126 (2d Cir. 1972); Sostre v. McGinnis, 442 F.2d 178, 200-201 (2d Cir. 1971), cert. denied, Oswald v. Sostre, 405 U.S. 978 (1972). See also Carothers v. Follette, 314 F. Supp. 1014, 1024 (S.D.N.Y. 1970). Several of the cases from other circuits take the same view. E.g., Smith v. Robbins, 454 F.2d 696 (1st Cir. 1972), aff'g 328 F.Supp. 162 (D. Me. 1971) (Gignoux, J.); see Note, Prison Mail Censorship and the First Amendment, 81 Yale L.J. 87 (1971). This case was all the more compelling because sixth amendment rights were also involved.
 
 
 4
 Since argument, however, the State Commission of Correction approved amended regulations, set out in the margin,[3] effective immediately. We commend the Commission for taking this initiative, construe the amended regulation generously on its face, and hold that this case has thereby been mooted.
 
 
 5
 We construe the amended regulation to mean that there is no limitation on the amount of "special correspondence" a detainee may have with counsel. Sec. 5100.10(e) (6). Clearly the regulation forbids examination or censorship of the content of such correspondence, even while it permits inspection for contraband, in the presence of the detainee. Such a provision adequately protects the sixth amendment right of detainees to effective assistance of counsel and precludes the official censorship or the reading that may so adversely affect the the inmate's free exercise of the right to consult with counsel.[4] On this point, then, we consider that the new regulations render the principal issue in the case moot. Cf. Richardson v. Wright, 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972). See generally, C. Wright, Law of Federal Courts 35-36 (2d ed. 1970).
 
 
 6
 We take the same view of that portion of the amended regulation which permits reading of other than "special" incoming and outgoing correspondence "to protect the safety and security of the facility and the welfare and best interests of the prisoners" and refusal to mail outgoing letters or to accept incoming mail "where it is apparent that there exists a clear and present danger to the jail or penitentiary." This language represents a considerable improvement over the earlier regulations. Sostre v. McGinnis, supra, 442 F.2d at 201, did "leave a more precise delineation of the boundaries of this protection [against censorship] for future cases." See Wright v. McMann, supra, 460 F.2d at 136 (concurring opinion). But under the new regulations censorship (by non-mailing) is apparently permitted only in the case of a "clear and present danger" to the facility's security, so that the new regulations have made a "more precise delineation," and one that appears to us to balance the conflicting interests appropriately. See also Note, Prison Mail Censorship and the First Amendment, 81 Yale L.J. 87 (1971).
 
 
 7
 Absent a showing that appellant's correspondence with his mother in Los Angeles would pose a clear and present threat to prison discipline or security, presumably such correspondence will not be further interfered with by the appellees.[5]
 
 
 8
 We affirm the judgment below for mootness.
 
 
 
 [1]
 42 U.S.C. Sec. 1983; 28 U.S.C. Secs. 1343(3), (4). See Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); see also Rodriguez v. McGinnis, 456 F.2d 79 (2d Cir.) (en banc), cert. granted, Oswald v. Rodriguez, 407 U.S. 919, 92 S.Ct. 2459, 32 L.Ed.2d 805 (1972)
 
 
 [2]
 7 NYCRR Sec. 5100.10(e) provided as follows:
 All incoming and outgoing letters should be carefully censored, the censorship stamp should be placed on all letters, dated, and initialed by the censoring officer. Prisoners should only be permitted to write letters on countyissue institution letterheads, and posting done by institutional personnel via window-type envelopes. Prisoners should be required to sign an order permitting the officials to open and examine all incoming mail. If the prisoner denies this permission, the officials should refuse to accept such mail from the postal authorities. Postage stamps should not be permitted in the cell or cell sections, and cancelled stamps and envelope flaps should be removed from all envelopes prior to issuance of mail to the prisoners. A record should be kept indicating from whom all incoming letters were received, and to whom outgoing letters were dispatched.
 
 
 [3]
 The amended regulation reads as follows:
 All incoming and outgoing correspondence, except that designated as "special correspondence" may be read by designated personnel of the jail or penitentiary to protect the safety and security of the facility and the welfare and best interests of the prisoners. In the discretion of the officials in charge, prisoners may be required to sign an authorization permitting them to open and inspect all incoming and outgoing mail. In the event such authorization is refused by the prisoner, officials may decline to mail outgoing letters or accept correspondence from the postal authorities where it is apparent that there exists a clear and present danger to the jail or penitentiary. Correspondence shall be subject to the following regulations:
 (1) An official inspection stamp shall be placed on the stationery of both incoming and outgoing letters, containing the name of the jail or penitentiary, date, and initials of the designated employee who inspected the correspondence.
 (2) Prisoners may write outgoing letters only on county-issued or other authorized stationery.
 (3) A record shall be kept indicating the name of the prisoner, date on which and from whom all incoming letters were received, and name of the prisoner, the date and to whom all outgoing letters are dispatched.
 (4) At least one outgoing letter per week shall be allowed with postage provided at county expense. Additional letters may be allowed at the discretion of the officials and at the prisoner's expense. It is recommended that authorized stationery for outgoing letters be the type which can be enclosed and forwarded in a "window" envelope which precludes issuing envelopes to prisoners and provides for more efficient processing.
 (5) Postage stamps shall not be permitted in the cells or cell sections and cancelled stamps and envelope flaps should preferably be removed from envelopes of incoming mail prior to issuance to prisoners.
 (6) Special correspondence shall be permitted to the President of the United States, the Governor of the State of New York, members of the New York State Legislature, the New York State Commission of Correction, the Chairman of the New York State Parole Board, and to any attorney or any court. Outgoing special correspondence may be examined in the presence of the prisoner to insure absence of contraband prior to mailing but shall not be read or censored. Incoming special correspondence shall be opened and inspected for contraband in the presence of the prisoner but shall not be read or censored. (To censor means to entirely withhold or to delete some or all of the contents of a letter.)
 
 
 [4]
 The amended regulations were foreshadowed by N.Y. Dep't of Correctional Services, Adm.Mem. #79 (Mar. 17, 1971, amended Apr. 7, 1971), superseded by N.Y. Dep't of Correctional Services Adm. Bull. #20 (Jan. 31, 1972), affording similar protections to convicted persons' mail, and we assume that the failure to amend the rule as to pretrial detainees was simply an oversight. The regulations now conform in this respect to Smith v. Robbins, 454 F.2d 696 (1st Cir. 1972), aff'g 328 F.Supp. 162 (D.Me.1971) (Gignoux, J., and Palmigiano v. Travisono, 317 F.Supp. 776 (D.R.I.1970); cf. Rhem v. McGrath, 326 F.Supp. 681, 690-691 (S.D.N.Y.1971) (inspection of incoming mail for contraband approved if adequate means for private inmate-counsel meetings guaranteed)
 
 
 [5]
 There is a factual dispute about the alleged non-receipt of the Los Angeles Times, appellees denying any refusal to deliver at any time. This we treat here as sufficiently de minimis not to warrant judicial scrutiny on this record, except to say that refusal to deliver a newspaper would ordinarily be interference with appellant's first amendment rights