782 F.2d 1134
 Albert WASHINGTON, Plaintiff-Appellant,
v.
Charles JAMES, in his capacity of Deputy Superintendent of
Security of Attica Correctional Facility; Harold J. Smith,
Superintendent of Attica Correctional Facility; and Donald
Chesworth, Director (BCI) Bureau of Criminal Investigation,
Division of State Police, Individually and in their official
Capacity, Defendants-Appellees.
 No. 356, Docket 84-2398.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 30, 1985.
Decided Feb. 3, 1986.
 
 Barbara Kolsun, New York City (Burrows & Poster, New York City, of counsel), for plaintiff-appellant.
 Lew A. Millenbach, Asst. Atty. Gen., State of N.Y., Albany, N.Y. (Robert Abrams, Atty. Gen. of State of N.Y., Robert Hermann, Sol. Gen., William J. Kogan, Asst. Sol. Gen., State of N.Y., Albany, N.Y., of counsel), for defendants-appellees.
 Before MANSFIELD, MESKILL and CARDAMONE, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 This is an appeal from a judgment of the United States District Court for the Western District of New York, Curtin, C.J., dated November 14, 1984, dismissing New York state prisoner Albert Washington's pro se civil rights complaint brought pursuant to 42 U.S.C. Sec. 1983 (1982), for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The complaint sought injunctive relief and damages in connection with the destruction by appellees of a package addressed to Washington and the interception and opening of his outgoing legal mail. We reverse and remand for further proceedings.
 
 BACKGROUND
 
 2
 Albert Washington's complaint, App. at 7-9, alleges the following facts. On March 11, 1982, Washington, an Attica prison inmate, was taken to a holding cell and locked therein for approximately one hour during which time the chief package room officer sorted packages in his sight. Appellee James, the Deputy Superintendent at Attica, arrived with personnel from the State Police Bureau of Criminal Investigation and interrogated Washington about the contents of a package addressed to him. James asked Washington what kind of explosives might be contained in the package. Washington responded that the package must contain food. During the course of the interrogation, James showed Washington "a legal letter ... pertaining to his case" which he had mailed to a paralegal, his legal assistant. Washington had had no prior knowledge that the letter had been intercepted by the administration. James referred "to a portion of the letter in which [Washington] was instructing counsel as to his case." The complaint went on to allege that Washington "heard on the local news" that the package and its contents had been destroyed by a high-pressure hose but that no bomb had been found. The complaint ended its succinct fact summary by stating that Washington had not received the contents of his package or any information as to its whereabouts.
 
 
 3
 Washington sought compensatory and punitive damages and injunctive relief (1) preventing appellees from (a) taking any retaliatory steps against him for bringing this suit or against any other inmate for submitting affidavits in the case; (b) transferring him to another prison during the pendency of this action; or (c) "using ... arbitrary and capricious conduct ... due to his Religious or Political beliefs;" and (2) requiring the prison officials to remove any reference to this suit or the events described in the complaint from the records and to afford him the same mail privileges as other similarly classified Attica inmates.
 
 
 4
 Appellee prison officials moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted, citing Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), for the proposition that the intentional or negligent deprivation of a prisoner's property does not violate the prisoner's constitutional rights where an appropriate state remedy exists. App. at 13. The affidavit in support of the motion stated that "based upon a letter intercepted by the administration" at Attica, James had made the determination that a package addressed to Washington might contain explosives. App. at 12-13. This was the only reference to mail in appellees' affidavit. Appellees admitted that the contents of the package had been destroyed. App. at 13.
 
 
 5
 Subsequently, Washington filed an affidavit and memorandum of law entitled "First Amendment" and subtitled "Legal Mail." In it, he alleged that appellees had failed to follow the Department of Correctional Services' (DOCS) Directive 4421[1] when they intercepted his legal mail and consequently denied him access to the courts in violation of his rights under the First and Fourteenth Amendments. Attached to Washington's affidavit was the affidavit of fellow prison inmate John Sapp who swore that on May 24, 1984, three days after the date of Washington's original complaint and more than two years after the incident which gave rise to the complaint, he had observed Washington's outgoing legal mail being "separated from the general populations [sic] mail and sent up to the Security Office to be censored. While all other out-going mail goes out after being stamped." App. at 19.
 
 
 6
 The district court agreed with appellees' argument that under Hudson v. Palmer the destruction of Washington's property did not rise to the level of a constitutional deprivation. This holding is not challenged on appeal.
 
 
 7
 In its discussion of the legal mail claim, the court noted first that Washington "mention[ed] in his complaint and in more detail in his response" that appellees "questioned him about a letter he had sent to his paralegal, leading plaintiff to believe his legal mail had been opened." App. at 20. Somewhat cryptically, the court stated that Washington did not "specifically mention [the opening of his mail] as a claim for which he requests relief," noting further that Washington emphasized the destruction of his property and appellees' lack of response to his requests for its replacement. App. at 20-21. The court made no mention of Sapp's affidavit. Notwithstanding its apparent lack of certainty as to whether Washington had stated a second claim, the court went on to analyze the legal mail claim finding that Directive 4421 was more supportive of appellees' motion to dismiss than it was of Washington's position because the directive "allows mail to be intercepted if there exists reasonable suspicion to believe its contents endanger or threaten the security, safety, or operation of the facility or the person to whom it is addressed." App. at 21-22. The court summarily decided that appellees' actions were excused because the directive "clearly applies to the bomb threat scenario." App. at 22. The complaint was dismissed and this appeal followed.
 
 DISCUSSION
 
 8
 Because Washington has subsequently been moved from Attica, most of the injunctive relief sought can no longer be given and is no longer needed. Therefore, some aspects of this controversy are moot. Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir.1983). Nevertheless, injunctive relief could be granted in certain respects, for example, by requiring appellees to remove from Washington's record any references to this suit. Additionally, on the record, it is unknown if prisoner Sapp is currently an inmate at Attica so that injunctive relief barring retaliation by appellees against him may still be appropriate.
 
 
 9
 Washington also requested a declaratory judgment that appellees' acts, policies and practices violated his constitutional rights and sought punitive damages in the amount of $50,000 preserving, thereby, a " 'legally cognizable interest in the outcome.' " Patrick v. LeFevre, 745 F.2d 153, 156, n. 2 (2d Cir.1984) (quoting United States Parole Commission v. Geraghty, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980) ). See also Pierce v. LaVallee, 293 F.2d 233, 234 (2d Cir.1961) (mere fact of transfer to another prison facility does not render civil rights action moot). Cf. Wilkinson v. Skinner, 462 F.2d 670 (2d Cir.1972) (amendment of prison mail regulation rendered challenge to constitutionality of old regulation moot). Live controversies remain; this case is not moot.[2]
 
 
 10
 On this appeal we must decide whether Washington's complaint sufficiently alleged a legal mail claim to allow this action to proceed. Under Rule 12(b)(6), a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). This principle is strictly applied when an action is brought claiming a violation of civil rights. Escalera v. New York City Housing Authority, 425 F.2d 853, 857 (2d Cir.), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970). See Owens v. Haas, 601 F.2d 1242, 1247 (2d Cir.), cert. denied, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); Turpin v. Mailet, 579 F.2d 152, 167 (2d Cir.) (in banc), vacated and remanded on other grounds, 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978). Because Washington brought this action pro se, the complaint should not be held to as rigorous a standard as formal pleadings prepared by an attorney. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972) (per curiam). See also Boag v. MacDougall, 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982) (per curiam); Frankos v. LaVallee, 535 F.2d 1346, 1347 & n. 2 (2d Cir.), cert. denied, 429 U.S. 918, 97 S.Ct. 310, 50 L.Ed.2d 284 (1976). We are also required at this stage to accept his allegations as true. Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1946) (per curiam).
 
 
 11
 In order to state a cause of action under 42 U.S.C. Sec. 1983, a plaintiff must allege that some person acting under color of state law deprived him of a federal right. Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); Dwyer v. Regan, 777 F.2d 825, 828 (2d Cir.1985). See also Dahlberg v. Becker, 748 F.2d 85, 89 n. 3 (2d Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). That the defendants are state actors is not in dispute.
 
 
 12
 A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure. Bounds v. Smith, 430 U.S. 817, 821-23, 97 S.Ct. 1491, 1494-95, 52 L.Ed.2d 72 (1977); Wolff v. McDonnell, 418 U.S. 539, 577-80, 94 S.Ct. 2963, 2985-86, 41 L.Ed.2d 935 (1974); Davidson v. Scully, 694 F.2d 50, 53 (2d Cir.1982); Corby v. Conboy, 457 F.2d 251, 253-54 (2d Cir.1972). As a corollary of his right of access, a prisoner has a right to correspond with his legal counsel. See Procunier v. Martinez, 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974); Christman v. Skinner, 468 F.2d 723, 725-26 (2d Cir.1972).
 
 
 13
 In his original complaint, Washington described the incident in March 1982 when James showed him his legal letter and alluded to passages contained in the letter. In his subsequent affidavit and memorandum entitled "First Amendment," in which he recited the prison's regulation governing legal mail, Washington stated unequivocally that "[a]t no time did defendant give or received [sic] proper authorization to open plaintiff's legel [sic] mail." App. at 15-16. Attached to this document was the affidavit of inmate Sapp, which described a second occurrence of interference with Washington's outgoing legal mail. App. at 19.
 
 
 14
 It is unclear whether Washington intended the caption "First Amendment" to indicate that his "Affidavit and Memorandum of Law" was his first amendment to the complaint or a First Amendment claim. Either conclusion is possible. However, because Washington was pro se and because a party may, as a matter of right, amend his complaint once at any time before a responsive pleading is served, the court, when ruling on a Rule 12 motion, should have given Washington the benefit of the doubt, giving consideration to the affidavit and treating the complaint as if it had been amended. Fed.R.Civ.P. 15(a); see Chodos v. F.B.I., 559 F.Supp. 69, 70 n. 2 (S.D.N.Y.), aff'd, 697 F.2d 289 (2d Cir.1982), cert. denied, 459 U.S. 1111, 103 S.Ct. 741, 74 L.Ed.2d 962 (1983) (motion to dismiss not a "responsive pleading" for Rule 15 purposes).
 
 
 15
 Although stated in less than artful words, the pro se complaint as amended can reasonably be read to allege that state prison officials intentionally violated Washington's right of reasonable access to the courts, see Bounds v. Smith, 430 U.S. at 821, 97 S.Ct. at 1494, and his right to receive and send legal mail, see Heimerle v. Attorney General, 753 F.2d 10, 12-13 (2d Cir.1985); Davidson v. Scully, 694 F.2d at 53; Wolfish v. Levi, 573 F.2d 118, 130 (2d Cir.1978), rev'd in part on other grounds sub nom., Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Christman v. Skinner, 468 F.2d at 725-26; Wilkinson v. Skinner, 462 F.2d at 671. Censorship of an inmate's mail is justified only if it furthers "one or more of the substantial governmental interests of security, order, and rehabilitation." Procunier v. Martinez, 416 U.S. at 413, 94 S.Ct. at 1811. Such interference with prisoners' mail "must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Id. See also Abdul Wali v. Coughlin, 754 F.2d 1015, 1029 (2d Cir.1985).
 
 
 16
 Furthermore, under section III of DOCS Directive 4421, incoming privileged correspondence may be opened and examined for cash, checks, money orders or contraband in the presence of the inmate to whom the communication is addressed, but outgoing privileged mail must not be opened or inspected in any manner unless authorized by the facility superintendent, upon written notice of the DOCS Commissioner. Substantial information must be conveyed to the Commissioner by a superintendent as a basis for the opening or inspection of such outgoing mail. Washington's amended complaint alleges that the procedures set forth in Directive 4421 were not followed in his case. App. at 16.
 
 
 17
 The complaint as amended can also be read to allege that the administration regularly opened Washington's outgoing mail to his legal counsel without any showing that a substantial governmental interest required this procedure. Appellees maintain that Washington did not state a constitutional claim because he asserted only an isolated instance of interference with privileged mail. Such an occurence might not give rise to an action for damages under 42 U.S.C. Sec. 1983 where the infraction was not in accordance with official policy or practice and where no showing had been made that the inmate's right of access to the courts was chilled or the legal representation he received was impaired. See Morgan v. Montanye, 516 F.2d 1367, 1372 (2d Cir.1975), cert. denied, 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976). However, the original complaint and the affidavits updating it refer to two separate incidents of interference with mail, one in the original complaint and one in the Sapp affidavit. This indicates an alleged continuing activity rather than a single isolated instance. Moreover, Washington asked for injunctive relief including the request "that he be afforded the same treatment in regards to his mail and packages as afforded to other inmates under Maximum 'A' security status," App. at 9, a further indication that he claimed the conduct was continuous.
 
 
 18
 In his affidavit, Washington claimed that appellees' actions denied him his rights to petition the courts for redress of grievances and to correspond with his legal counsel. In looking at the allegations of the original complaint, and considering Washington's memorandum and affidavit as an amendment to the complaint, we cannot say that under no circumstances could he prove that appellees' interference with his outgoing legal mail violated his constitutional rights. Contrary to appellees' argument that the complaint is a conclusory allegation devoid of facts supporting a legal mail claim and, therefore, inadequate as a matter of law, we hold that the complaint is sufficient to survive a 12(b)(6) motion. All that the Federal Rules of Civil Procedure require is "a short and plain statement of the claim" that will give the defendant fair notice of the nature of the claim and the grounds upon which it rests. Conley v. Gibson, 355 U.S. at 47, 78 S.Ct. at 102; Fed.R.Civ.P. 8(a)(2). While we agree with appellees' assertion at oral argument that the original complaint focused mainly on the property claim, we are unpersuaded by the argument that it never occurred to the assistant attorney general representing appellees that there was a claim for a legal mail violation. Whether or not appellees were in fact aware that a legal mail claim was being stated, they should have been. The complaint should not have been dismissed pursuant to Rule 12(b)(6). Haines v. Kerner, 404 U.S. at 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652.
 
 
 19
 Furthermore, whether Washington's affidavit and memorandum of law were considered as an amendment to the complaint or merely as an affidavit, they were considered. To the extent that the dismissal below was based on evidence set forth in the affidavits of Washington, Sapp and the appellees, it was essentially a grant of summary judgment. Morgan v. Montanye, 516 F.2d at 1370. The wording of the decision itself indicates as much. After noting that Washington had filed an affidavit, the court concluded that "this case is ready for decision." App. at 20. Assuming arguendo that all of the procedural requisites of Rule 56 had been complied with, we cannot say on this record that there was no genuine issue of material fact and that appellees were entitled to judgment as a matter of law. Sapp's and Washington's affidavits together raise a genuine issue of material fact, namely whether there has been a regular, unjustified interference with Washington's outgoing legal mail. We assume that appellees would either deny that the interference was ongoing or claim justification and that proper procedures were being followed. Therefore, summary judgment would not have been proper either.
 
 
 20
 We reverse and remand for further proceedings.
 
 CARDAMONE, Circuit Judge, dissenting:
 
 21
 I dissent respectfully because Washington's complaint fails to allege that he suffered any damage resulting from the isolated interference with his mail or that defendants have continued to intercept his mail. Morgan v. Montayne, 516 F.2d 1367, 1370-72 (2d Cir.1975), cert. denied, 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976). A single interference or, in this case, delaying delivery of a prisoner's mail service does not raise a question of constitutional dimension. Id. Further, there are no allegations in the complaint that Washington's mail was censored or not ultimately delivered or that he was denied access to the courts. I cannot agree with the majority that the affidavit annexed to Washington's responding papers can be read to claim that routing of his mail to the security office of the correctional facility, two years after the initial interception, was part of an ongoing practice of defendants or that he suffered any damage. Absent proof of damages, a single violation of a prisoner's mail rights does not state a claim cognizable under 42 U.S.C. Sec. 1983.
 
 
 22
 Together with defendants' motion to dismiss Washington's complaint for failure to state a claim upon which relief can be granted, an Assistant Attorney General filed an affidavit in support stating that based upon a letter which had been intercepted by the administration of the Attica facility, Deputy Superintendent James made a determination that a package addressed to Washington might contain explosives. Personnel from the Bureau of Criminal Investigation of the New York State Police arrived at Attica to assist in the investigation. Clearly defendants provided direct evidence that the requirements of Directive # 4421 Part III(A)(1) were complied with, and therefore the district court's finding that "This directive clearly applies to the bomb threat scenario in the instant case, thereby excusing defendants' actions," is not clearly erroneous. The May 24, 1984 interception arguably was an isolated instance and there are no allegations that it was conducted in accordance with official policy. Federal courts should carefully refrain from interfering in the administration of state prisons and not undertake to direct those officials in how mail procedures should be handled, without an indication that delays in outgoing prisoner mail resulted in actual denial of access to federal courts. Pickett v. Schaefer, 503 F.Supp. 27, 28 (S.D.N.Y.1980) (emphasis added).
 
 
 
 [1]
 Section III(A)(1) of the New York State DOCS Directive 4421 dated January 14, 1982 on privileged correspondence, applicable when Washington attempted to mail the letter at issue herein, states in pertinent part that outgoing privileged mail
 must not be opened or inspected in any manner unless authorized by the Facility Superintendent, upon written notice of the Commissioner. Substantial information must be conveyed to the Commissioner by a Superintendent as a basis for this action. In such cases, there must be a reasonable suspicion to believe that the contents of such mail endangers or threatens the safety, security, and operations of a facility or the safety of a party to whom the letter is addressed.
 (emphasis added).
 Included in the definition of what constitutes "privileged correspondence" is mail between an inmate and an attorney, an approved legal representative or an attorney's authorized representative. Authorized representatives are defined as paralegals, law students and "investigators or any other individuals identifiably employed by or under the supervision of and responsible to an attorney." Directive 4421 Sec. II(1).
 
 
 [2]
 It is not quite clear what relief Washington is requesting at this time. At oral argument, counsel for Washington seemed to indicate that Washington is requesting only punitive damages and nominal compensatory damages, in addition to a development of the record