**Robert CALIA, Plaintiff,**

v.

**Roger WERHOLTZ, David McKune, and Steve Laun, Defendants.**

No. 05–3201 JAR.

United States District Court, D. Kansas.

April 12, 2006.

Robert Calia, Overland Park, KS, Pro se.

Ralph J. Dezago, Office of Attorney General, Topeka, KS, for Defendant.

## MEMORANDUM ORDER AND OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ROBINSON, District Judge.

This matter comes before the Court on defendants' Motion for Summary Judgment (Doc. 25). Defendants, Roger Werholtz, David McKune, and Steve Laun, seek summary judgment on plaintiff's Complaint pursuant to Fed.R.Civ.P. 56 arguing that the Court lacks subject matter jurisdiction in this case because defendants are entitled to immunity. As described more fully below, the Court grants defendants' motion for summary judgment.

## I. Subject Matter Jurisdiction

There are two statutory bases for federal subject matter jurisdiction. First, under 28 U.S.C. § 1332, federal district courts have original jurisdiction of civil actions where complete diversity of citizenship and an amount in excess of $75,000 (exclusive of interest and costs) in controversy exist. Second, under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising

under the Constitution, laws or treaties of the United States," or federal question jurisdiction. In addition, if the Court has federal question or diversity jurisdiction of some claims, it may exercise supplemental jurisdiction over state law claims.[1]

■ The Tenth Circuit has commented on the limited jurisdiction of the federal courts and summarized the duties of the district court in considering whether it has jurisdiction to consider a case:

> The Federal Rules of Civil Procedures [sic] direct that "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." ... Moreover, "[a] court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." ... Nor may lack of jurisdiction be waived or jurisdiction be conferred by "consent, inaction or stipulation." Since federal courts are courts of limited jurisdiction, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof.[2]

Plaintiff is responsible for showing the court by a preponderance of the evidence that jurisdiction is proper.[3] Mere allegations of jurisdiction are not enough.[4]

## II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[5] A fact is only material under this standard if a dispute over it would effect the outcome of the suit.[6] An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[7] The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[8]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[9] "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[10] The burden may be met by showing that there is no evidence to support the nonmoving party's case.[11] If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of

---

1. 28 U.S.C. § 1367.

2. *Penteco Corp. v. Union Gas System*, 929 F.2d 1519, 1521 (10th Cir.1991) (internal citations and quotations omitted).

3. *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir.2002).

4. *Id.* at 798.

5. Fed.R.Civ.P. 56(c).

6. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

7. *Id.*

8. *Id.* at 251–52, 106 S.Ct. 2505.

9. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

10. *Thom v. Bristol–Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir.2003) (citing *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548).

11. *Id.*

fact could find for the nonmovant."[12] When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[13]

■ Defendants filed their summary judgment motion on February 6, 2006. Plaintiff's response to the summary judgment motion was due twenty-three days later, on March 1, 2006.[14] To date, plaintiff has not responded to defendants' summary judgment motion. The District of Kansas Local Rules provide that a party's failure to file a timely response constitutes a waiver of the right to file a response, except upon a showing of excusable neglect.[15] Plaintiff has not attempted to make this showing; therefore, the Court finds that plaintiff has waived his ability to file a response.

■ Although plaintiff has not responded to defendants' motion, this alone does not make summary judgment proper, for plaintiff's burden to respond arises only if the motion is properly supported in the first instance.[16] "Accordingly, summary judgment is appropriate under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c)."[17] If the evidence presented by the moving party does not satisfy this burden, "summary judgment must be denied *even if no opposing evidentiary matter is presented.*"[18] Thus, if a nonmoving party fails to respond to a motion for summary judgment, the court must first examine the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and that the moving party is entitled to judgment as a matter of law.[19]

■■ Additionally, the Court must be mindful in this case of plaintiff's pro se status. A pro se litigant's pleadings are to be liberally construed and are held to a less stringent standard.[20] This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction.[21] However, the court is not authorized to become the advocate for the pro se litigant.[22] "Despite the liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."[23] Moreover, plaintiff is not excused from compliance with fundamental rules of procedure because he is proceeding pro se.[24] Pro se litigants must follow rules of procedure, including local rules.[25] Plaintiff's pro se

---

12. *Id.*

13. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

14. D. Kan. R. 6.1(d)(2).

15. D. Kan. R. 7.4.

16. *See Reed v. Bennett,* 312 F.3d 1190, 1195 (10th Cir.2002) (stating that " '[n]o defense to an insufficient showing is required' " from the nonmoving party (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970))).

17. *Id.* at 1194.

18. *Id.*

19. *Id.* at 1194–95.

20. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

21. *Id.* at 1110.

22. *Id.*

23. *Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir.1991).

24. *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir.1994), *cert. denied,* 513 U.S. 1090, 115 S.Ct. 750, 130 L.Ed.2d 650 (1995).

25. *Green v. Dorrell,* 969 F.2d 915, 917 (10th Cir.1992), *cert. denied,* 507 U.S. 940, 113 S.Ct. 1336, 122 L.Ed.2d 720 (1993); *Campbell v.*

status, in and of itself, does not prevent this Court from granting summary judgment.[26]

## III. Uncontroverted Facts [27]

Plaintiff is a former inmate of Lansing Correctional Facility. During his period of incarceration, plaintiff sought assistance in subscribing to various newspaper, magazine, and newsletter publications. Plaintiff was advised that he would be restricted from subscribing to these publications based on the Kansas Department of Corrections' Internal Management Policy and Procedure ("IMPP") 11–101 and 12–120. IMPP 11–101 promulgates a level system that classifies prisoners based on certain criteria, including the prisoner's behavior, and awards privileges and incentives based on the prisoner's level. Under IMPP 11–101, a Level I offender is not entitled to books, magazines, and newspapers per IMPP 12–120. Because plaintiff was classified as a Level I offender, he was denied his requests for subscriptions.

On January 21, 2005, plaintiff filed an Inmate Complaint with his Unit Team Manager, defendant Laun, alleging that IMPP 11–101 infringed on his First Amendment right to purchase a subscription to *The Kansas City Star* newspaper. Plaintiff received defendant Laun's response, denying his requests, on January 24, 2005. Plaintiff appealed to the Warden of Lansing Correctional Facility, defendant David McKune. In a memorandum to plaintiff dated January 27, 2005, defendant McKune denied plaintiff's appeal. The facts that occurred after defendant McKune's denial of plaintiff's appeal are in dispute, but are not relevant to the case at this point. Defendants allege that plaintiff did not seek an appeal with the Secretary of Corrections, defendant Roger Werholtz, an act that plaintiff was required to complete within three days of the denial of his appeal in order to exhaust his administrative remedies.[28] Plaintiff, however, disputes his failure to file an appeal with the Secretary of Corrections. Plaintiff alleges that he delivered his appeal to the Unit Team Manager, who agreed to submit the appeal to the Secretary of Corrections' office. Because this Court has already determined that plaintiff's claim is not barred by his failure to exhaust his administrative remedies,[29] whether plaintiff appealed to defendant Werholtz for relief is immaterial.

On April 21, 2005, plaintiff was released on parole. Plaintiff then filed this action against defendants in their individual and official capacities alleging civil rights violations under 42 U.S.C. § 1983. Plaintiff claims that his First Amendment rights were violated by defendants' implementation of IMPP 11–101 and 12–120. In one part of his Complaint, plaintiff states that he is seeking injunctive, compensatory, and punitive damages.[30] However in his "Request for Relief," plaintiff only

---

*Meredith Corp.,* 260 F.Supp.2d 1087, 1097 n. 10 (D.Kan.2003).

**26.** *Northington v. Jackson,* 973 F.2d 1518, 1521 (10th Cir.1992).

**27.** D. Kan. 56.1(a) provides that "[a]ll material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." By failing to file a response to defendants' summary judgment motion, "[plaintiff] waived the right to file a response and confesse[d] all facts asserted and properly supported in the motion." *Murray v. City of Tahlequah,* 312 F.3d 1196, 1199 (10th Cir. 2002). Thus, to the extent defendants' factual allegations find support in the record, the Court has accepted them as true.

**28.** Kan. Admin. Regs. § 44–15–102(c)(1).

**29.** (Doc. 21.)

**30.** (Doc. 1 at 3.)

seeks compensatory damages, punitive damages, and attorney fees and costs.[31] Because plaintiff has been released from prison, his claims for injunctive relief are moot.[32] Thus, the Court will only address plaintiff's claims for monetary relief. Defendants now move for summary judgment arguing that plaintiff's § 1983 claim should be dismissed because this Court lacks subject matter jurisdiction when defendants are entitled to immunity.

## IV. Discussion

Defendants move to dismiss on the grounds that they are immune from suit in their official capacity under the Eleventh Amendment to the United States Constitution and to the extent the individuals are sued in their personal capacity, they are protected by qualified immunity.

### A. Official Capacity Claims

The Eleventh Amendment states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[33] The Supreme Court has repeatedly explained that the amendment confirms the historically-rooted understanding of sovereign immunity, which is that federal jurisdiction over suits against unconsenting states-even by its own citizens-"was not contemplated by the Constitution."[34]

■ It is settled law that under the Eleventh Amendment, states are immune from suit unless (1) the state consents to suit, or (2) Congress validly abrogates the states' immunity.[35] The State of Kansas does not consent to suit under this statute, and Congress may not abrogate state immunity for section 1983 claims under its Fourteenth Amendment authority.[36] Eleventh Amendment immunity also extends to state officials who are sued in their official capacity.[37] Such suits are tantamount to suits directly against the state, since plaintiff seeks monetary damages that would be paid out of the state's treasury.[38] In this case, because plaintiff's requested relief is for money damages only, defendants are entitled to immunity for any claims asserted against them in their official capacity. Therefore, summary judgment is granted in favor of defendants on plaintiff's official capacity claims.

**31.** (Doc. 1 at 5.)

**32.** *See Booth v. Barton County,* 157 F.Supp.2d 1178, 1182 (D.Kan.2001) (finding that a released prisoner's claims were moot because the entry of declaratory judgment in his favor would amount to nothing more than a declaration that he was wronged, but would have no effect on defendant's behavior).

**33.** U.S. Const. amend. XI.

**34.** *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (quoting *Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).

**35.** *Id.* at 54–55, 116 S.Ct. 1114; *Nelson v. Geringer,* 295 F.3d 1082, 1096 (10th Cir. 2002).

**36.** *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 63, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Nelson,* 295 F.3d at 1096 (citing *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)).

**37.** *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Searles v. VanBebber,* 993 F.Supp. 1350, 1353 (D.Kan.1998), *aff'd in part and vacated in part on other grounds,* 251 F.3d 869 (10th Cir. 2001), *cert. denied,* 536 U.S. 904, 122 S.Ct. 2356, 153 L.Ed.2d 179 (2002).

**38.** *Kentucky v. Graham,* 473 U.S. at 165, 105 S.Ct. 3099.

## B. Individual Capacity Claims

 Under § 1983, a suit against a government official may be made to impose individual liability for actions taken under color of state law.[39] In order to establish individual liability in a § 1983 suit, a plaintiff only need show that the official, "acting under color of state law, caused the deprivation of a federal right."[40] A defendant sued in his individual capacity may be able to assert personal immunity defenses such as qualified immunity.[41]

 Upon a defendant's assertion of a qualified immunity defense in a summary judgment motion, plaintiff has a two-part burden. Plaintiff must come forward with facts or allegations that the defendant's conduct was a violation of a clearly established constitutional or statutory right at the time of its occurrence and that the violated right was "clearly established such that a reasonable person in the defendant's position would have known the conduct violated the right."[42] The issue of immunity is a legal one and the court may not avoid it by framing it as a factual issue.[43] The Supreme Court counsels that before addressing the issue of qualified immunity, the court must first consider: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[44]

In this case, plaintiff alleges violations of his First Amendment rights based on de-fendants' imposition of the IMPP that bans Level I prisoners from obtaining newspaper subscriptions. To support the argument that the prohibition does not violate a clearly established right, defendants cite to only one case, *Prison Legal News, Inc. v. Simmons*.[45] Defendants state that in this case Judge Belot "felt compelled to discuss for over seven pages whether a right is clearly established, pointing ultimately that the right which the current plaintiff seeks to assert is *not* clearly established."[46] The Court disagrees with defendants' reading of this case. Judge Belot may have "felt compelled" to discuss the Tenth Circuit's standard for determining whether a constitutional right is clearly established because he needed to determine whether the plaintiffs' citation to one Ninth Circuit opinion supported their argument that plaintiffs had a clearly established right to receive gift subscriptions in prison. This is not the issue here. When presented with the issue relevant in this case, whether the IMPP's ban on subscriptions for Level I prisoners violated a clearly established right, Judge Belot found that plaintiffs had failed to address this issue in their brief, and accordingly, they had failed to meet their burden of showing that this right was clearly established.[47] In the alternative, Judge Belot looked to a case cited by plaintiffs earlier in the proceedings, determined that plaintiffs' reliance on that case was misguided, and found that this case did not support plaintiffs' position that the ban violated a clear-

---

39. *Id.*

40. *Id.*

41. *Id.*

42. *Lawmaster v. Ward,* 125 F.3d 1341, 1347 (10th Cir.1997); *see Pueblo Neighborhood Health Ctrs. v. Losavio,* 847 F.2d 642, 646 (10th Cir.1988).

43. *Lawmaster,* 125 F.3d at 1347.

44. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Gonzales v. Martinez,* 403 F.3d 1179, 1186 (10th Cir. 2005).

45. 401 F.Supp.2d 1181 (D.Kan.2005).

46. (Doc. 26 at 4) (emphasis in original).

47. *Simmons,* 401 F.Supp.2d at 1194.

ly established right.[48] Because plaintiffs failed to meet their burden by presenting case law supporting their position, Judge Belot was never required to delve into an analysis of whether the IMPP's ban violates a clearly established right.[49]

█ Despite defendants' faulty reliance on this single case, the Court agrees with defendants' assertion that "the rights of inmates regarding the receipt of newspapers, balanced against the prison's rights to security and to provide incentive is hardly settled law." [50] The Supreme Court has stated that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." [51] In determining whether a regulation is reasonable, the Supreme Court looks to four factors: (1) whether there is a valid, rational connection between the prison regulation and the legiti-

mate governmental interest; (2) whether the regulation or practice allows inmates an alternative means of exercising the subject constitutional rights; (3) the impact of accommodation of the asserted right on guards, other inmates, and the allocation of resources generally; and (4) the absence of ready alternatives to the regulation.[52] Courts have upheld prison regulations banning an inmate's receipt of periodicals when the prohibition is related to legitimate penological interests.[53]

The United States Supreme Court recently granted certiorari in a case from the Third Circuit involving a similar issue.[54] In that case, the Third Circuit held that the Pennsylvania Department of Corrections' ("DOC") prison policy prohibiting inmates confined at a "Level 2" status from accessing newspapers, magazines, photographs violated the First Amendment.[55] While the DOC argued that the prohibition

---

**48.** *Id.* at 1195.

**49.** The Court is troubled by defendants' assertion that "Judge Belot[ ] determin[ed] that the law on this point is not clearly established. Even if Judge Belot is wrong, and it is clearly established, is there more reason to believe that the defendants would know this than a Federal District judge? Clearly not." (Doc. 26 at 5.) The Court suggests that a closer reading of the case would have prevented defendants' counsel from making this bald assertion.

**50.** (Doc. 26 at 4.)

**51.** *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

**52.** *Id.* at 89–90, 107 S.Ct. 2254.

**53.** *See e.g. Maydak v. United States,* 98 Fed. Appx. 1, 2004 WL 852218, at *2 (D.C.Cir. 2004) (holding that an inmate's First Amendment rights were not violated when the prison withheld his newspaper subscription during his confinement in disciplinary segregation because the prohibition was rationally related to a legitimate penological interest in deterring and punishing misbehavior); *Lovern v.*

*Cox,* 374 F.Supp. 32, 35 (D.C.Va.1974) (upholding prison regulation banning newspapers and magazines because defendants showed that newspapers were continually used to stop up the plumbing and were used twice to burn mattresses). Courts have also struck down such regulations when they are not related to legitimate penological interests. *See e.g. Mann v. Smith,* 796 F.2d 79, 83 (5th Cir.1986) (holding that prison regulation limiting access to periodicals infringed on plaintiff's constitutional rights when defendants did not show how the regulation was related to legitimate jail function); *Rowland v. Jones,* 452 F.2d 1005, 1006 (8th Cir.1971) (finding that a prison's prohibition of a newspaper constituted a prior restraint and violated the First Amendment, but acknowledged that access to reading material may be limited by security concerns). *See also Wilkinson v. Skinner,* 462 F.2d 670, 673 n. 5 (2d Cir.1972) (stating in dicta that "refusal to deliver a newspaper would ordinarily be interference with appellant's first amendment rights").

**54.** *Beard v. Banks,* —— U.S. ——, 126 S.Ct. 650, 163 L.Ed.2d 525 (2005).

**55.** *Banks v. Beard,* 399 F.3d 134, 148 (3d Cir.2005).

was related to prison security concerns, the Third Circuit found that there was no evidence of prisoners' misuse of periodicals or photographs in the ways asserted by the DOC, such as to start fires or to fashion into weapons.[56] Further, the court found that given the materials that prisoners were permitted to have in their cells that could be used to start fires or create weapons, there was no significant relationship between the ban on periodicals and photographs to the DOC's stated security objectives.[57]

Defendants also argued that the prohibition served rehabilitation interests by making the "Level 2" status less endurable and by discouraging inmates from committing rule infractions that would cause the inmate to remain at a "Level 2" status.[58] However, the court rejected this argument finding that because the "Level 2" status had both characteristics of a disciplinary and administrative segregation and the "Level 2" status was not based on a specific rule infraction or for a specific duration, there was no logical relationship between the prohibition and the DOC's rehabilitation objectives.[59] The Supreme Court has granted certiorari to address whether "a prison policy that denies newspapers, magazines, and photographs to the most difficult inmates in the prison system in an effort to promote security and good behavior violate the First Amendment under the standards of *Turner* and *Overton* [?]" [60] Oral argument was scheduled for March 27, 2006. At the time of the issuance of this order, the Supreme Court had not yet issued an opinion. Because of the unanswered question in *Banks*, plaintiff cannot show that defendants violated a clearly established constitutional right by implementing the IMPP regulations.

Additionally, this Court recognizes that the regulation in that case is arguably less reasonable than the regulation in Kansas for two reasons. First, the regulation in *Banks* differs from this case in that the "Level 2" prisoners in that case were completely banned from accessing periodicals, even in a library. The Third Circuit suggested that an alternative to this policy would be to escort individual prisoners to a secure library to read the periodical of their choosing.[61] The prisoners in this case do not face such restrictive conditions. In Kansas, IMPP 10–107 requires that each prison facility maintain or provide access to library resources and services that are accessible daily, including evenings and weekends. In this case, Level I prisoners do not face a total prohibition of access to newspapers, but IMPP 11–101 and 12–120 do prevent Level I offenders from purchasing newspaper subscriptions and possessing newspapers as post-intake property. While it has been found that a total denial of access to periodicals is unconstitutional,[62] Level I prisoners in Kan-

---

**56.** *Id.* at 142–43.

**57.** *Id.* at 143.

**58.** *Id.* at 140.

**59.** *Id.* at 141.

**60.** *Banks v. Beard,* 399 F.3d 134 (3d Cir. 2005), *appeal docketed,* No. 04–1739 (U.S. June 27, 2005) *at* http://www.supreme courtus.gov/docket/ 04–1739.htm (citing *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Overton v. Bazzetta,* 539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003)).

**61.** *Banks,* 399 F.3d at 147.

**62.** *See e.g. Parnell v. Waldrep,* 511 F.Supp. 764, 767–68 (W.D.N.C.1981) ("The prohibition of virtually all reading material deprives the inmates of their First Amendment right to receive information and ideas."); *Hutchings v. Corum,* 501 F.Supp. 1276, 1299 (W.D.Mo. 1980) (concluding that an absolute denial of access to newspapers, with no alternative means of securing newspapers under defendant's blanket prohibition, violated the inmates' First Amendment rights).

sas still have access to periodicals through use of the library rather than obtaining periodicals through subscriptions. One Circuit court has held that the existence of an alternative means to access periodicals satisfies one of the *Safley* factors.[63] Likewise, prisoners in Kansas have an alternative means to access periodicals in a library, unlike the prisoners in *Banks*. Therefore, plaintiff cannot show that the implementation of the IMPP, which allows access to periodicals through alternative means, violates a clearly established right.

Second, this case differs from *Banks* in that the prisoner classification scheme in Kansas and the prohibition of subscriptions to Level I prisoners is related to disciplinary regulations. Other courts have found that an inmate's First Amendment rights are not violated when the prisoner's classification was related to a disciplinary infraction, and therefore the regulation was imposed to provide an incentive to the inmate to improve behavior.[64] However, in *Banks*, the court rejected defendants' argument that the regulation was reasonably related to rehabilitation efforts when the "Level 2" classification was not based on disciplinary action.[65] In Kansas, a Level I offender has the opportunity for promotion to Level II status, a categorization that allows newspaper subscriptions, based on disciplinary requirements. IMPP 11–101 provides that an inmate who remains free of Class I and Class II disciplinary convictions, has no pending disciplinary reports, and demonstrates a willingness to participate in recommended programs and/or work assignments for 120 consecutive days may advance to Level II. Per IMPP 11–101, Level II inmates are authorized to maintain one newspaper subscription. Therefore, because the classification of prisoners in Kansas is related to disciplinary requirements, the prohibition is unlike regulations that courts have found to violate the First Amend-

---

**63.** *See Maydak v. United States,* 98 Fed.Appx. 1, 2004 WL 852218, at *2 (D.C.Cir.2004) (holding that the government satisfied all of the *Safley* factors, including an alternative means, because the plaintiff prisoner was allowed access to other reading materials even though he was prohibited from accessing his newspaper subscription).

**64.** *See e.g. Gregory v. Auger,* 768 F.2d 287, 290 (8th Cir.1985) (upholding prison policy restricting mail privileges of inmates placed in disciplinary detention section because the regulation was a means to deter future disciplinary infractions by making the detention less pleasant); *Daigre v. Maggio,* 719 F.2d 1310, 1313 (5th Cir.1983) (finding prison mail restrictions on those placed in solitary confinement was a disciplinary measure intended to promote the important government interest in maintaining discipline and thus did not violate the First Amendment); *Maydak,* 2004 WL 852218, at *2–3 (holding that an inmate's First Amendment rights were not violated when the prison withheld his newspaper in disciplinary segregation because without the prohibition "disciplinary segregation [would] appear less unattractive, having a potentially

adverse effect on other inmates' incentives for following prison rules").

**65.** *Banks,* 399 F.3d at 141 (finding that because the "Level 2" status had both characteristics of a disciplinary and administrative segregation and the "Level 2" status was not based on a specific rule infraction or for a specific duration, there was no logical relationship between the prohibition and the DOC's rehabilitation objectives); *see also Spellman v. Hopper,* 95 F.Supp.2d 1267 1281–82 (M.D.Ala.1999) (stating that the reasoning of the courts in *Gregory and Daigre* did not apply to the instant case because in those cases, temporary restrictions on receipt of subscriptions were imposed to provide incentives to inmates. In *Spellman,* the court held that the Alabama Department of Correction regulation prohibiting administrative segregation inmates from receiving subscriptions magazines was unconstitutional because the administrative segregation classification was not based on a prisoner's disciplinary infractions.).

ment when such regulations are not related to inmate discipline. Thus, it is not clearly established that a regulation prohibiting receipt of subscriptions that is logically related to rehabilitation violates a constitutional right.

 Based on the cases cited above, defendants' implementation of the IMPP in this case did not violate a clearly established constitutional right at the time of its occurrence. Currently, because of the posture of *Banks,* it is not clearly established that a prison regulation prohibiting total access to newspapers in order to promote security and rehabilitation concerns violates the First Amendment of the United States Constitution. Further, it is not clearly established that a prohibition on receiving newspaper subscriptions based on disciplinary requirements, but which allows access to a prison library to view periodicals, violates the First Amendment. Because the law was not clearly established at the time plaintiff was denied his newspaper subscription, plaintiff cannot meet the first part of his two-part burden by showing that defendants' conduct violated a clearly established constitutional right. Therefore, defendants are entitled to qualified immunity for their actions, and summary judgment must be granted in favor of defendants.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion for Summary Judgment (Doc. 25) is **GRANTED.**

**IT IS SO ORDERED.**