Ford v. Fischer

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of November, two thousand thirteen.

PRESENT:
> **Jon O. Newman,**
> **Rosemary S. Pooler,**
> **Debra Ann Livingston,**
> *Circuit Judges.*

---

**COREY FORD,**

> *Plaintiff-Appellant*,

> **v.** 12-4193

**BRIAN FISCHER, COMMISSIONER, DOCS,**
*et al.*,

> *Defendants-Appellees*.

---

| | |
|---|---|
| **FOR PLAINTIFF-APPELLANT:** | Corey Ford, *pro se*, Wallkill, N.Y. |
| **FOR DEFENDANTS-APPELLEES:** | Eric T. Schneiderman, Attorney General of the State of New York; Barbara D. Underwood, Solicitor General; Andrea Oser, Deputy Solicitor General of Counsel; Martin A. Hotvet, Assistant Solicitor General, Albany, N.Y. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Hurd, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Corey Ford, *pro se*, appeals from the October 4, 2012 judgment of the district court, granting summary judgment in favor of corrections officials Joseph Smith and John Maly in his 42 U.S.C. § 1983 action alleging violations of his constitutional rights arising from his incarceration at Shawangunk Correctional Facility. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Under the First Amendment, prisoners have a right to "the free flow of incoming and outgoing mail." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). A prisoner's right to receive and send mail may be regulated, s*ee Davidson v. Mann*, 129 F.3d 700, 702 (2d Cir. 1997), "'if it is reasonably related to legitimate penological interests,'" *Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir. 1987) (quoting *Turner v. Safley*, 482 U.S. 78, 80 (1987)). Furthermore, restrictions on prisoners' mail are justified "only if they 'further[ ] one or more of the substantial government interests of security, order, and rehabilitation . . . [and] must be no greater than necessary or essential to the protection of the particular government interest involved.'" *Davis*, 320 F.3d at 351 (alterations in original) (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)).

"The [Supreme] Court has counseled judicial restraint in the federal courts' review of prison policy and administration, noting that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.'" *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir. 1995) (quoting *Turner*, 482 U.S. at 84). This deferential approach "is heightened with respect to the specific issue of 'maintaining prison security and protecting against increased inmate violence,' which the Supreme Court has described as 'central to all other correction goals.'" *Duamutef v. Hollins*, 297 F.3d 108, 112 (2d Cir. 2002) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989)).

The district court record shows that: (1) Maly and Smith stated in sworn declarations that Ford wrote and received "kited" letters[1]—a form of "contraband"—throughout the period the mail watch was in effect from 2004 to 2009; (2) in Ford's sworn declaration, he did not confirm or refute that he wrote or received kited letters during this period; and (3) in Ford's unsworn response to the summary judgment motion, he stated that "had [he] been in violation of correspondence directives [governing kited letters] [during] the period of 2008, there's no evidence to prove such or up to March 2009." Although Maly's and Smith's declarations generally support a finding that kited letters were mailed to and received by Ford during the period of 2004 to 2009, "[c]onclusory assertions in affidavits are generally insufficient to resolve

---

[1] "Kiting" is a process by which one letter is sent to one individual with a request that an enclosed second letter be forwarded to another individual.

2

factual disputes that would otherwise preclude summary judgment." *Allen v. Coughlin*, 64 F.3d 77, 80 (2d Cir. 1995). The only basis in the record supporting the continuation of the mail watch during 2008 and early 2009 was the general, and conclusory, claim that Ford had contact with kited letters; however, no specific letters, nor any indication of the contents of the kited letters, were identified.

There is no question that the 2004 stabbing of a corrections officer constituted a valid basis for the imposition of a term of mail watch on Ford, since prison authorities needed to investigate whether the stabbing was part of a larger scheme. However, there is no evidence in the record that the investigation of the stabbing was ongoing. The only basis in the record for continuing the mail watch for a period of years was the transmission of kited letters. In *Duamutef*, we held that a thirty-day mail watch was permitted in light of the prisoner's extensive disciplinary history, and because he had a book entitled *Blood in the Streets* mailed to him. 297 F.3d at 113. Even though the book turned out to be an economics text, we held that prison officials did not violate the prisoner's constitutional rights by imposing this "limited" term of mail watch. *Id.* And we also determined that either way, the defendants were entitled to qualified immunity. *Id.* at 114.

Similarly, we conclude here that appellees are entitled to qualified immunity. Given the dearth of case law analyzing what factors warrant the continuation of a mail watch and the extent to which the reasons for continuing mail watch must be documented, we conclude that the law is not clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). Further, no reasonable jury could conclude that it was objectively unreasonable for appellees to have concluded—based on Ford's continued contact with contraband, in the form of the continued receipt of kited letters—that an extension of the mail watch on Ford was warranted. *Id.* Accordingly, we affirm the district court's grant of summary judgment on Ford's mail watch claim.

With respect to Ford's claim that his marriage request was improperly denied, an independent review of the record and relevant case law reveals that the district court properly adopted the magistrate judge's recommendation to grant summary judgment on this claim. On this claim, we affirm for substantially the same reasons stated by the magistrate judge in his thorough August 7, 2012 Report and Recommendation.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

3